In the United States Court of Federal Claims

No. 13-859 C

(Filed July 21, 2016)

**UNPUBLISHED**

| | |
|---|---|
| * * * * * * * * * * * * *    * <br> MAGNUS PACIFIC CORP.,     * <br>                              * <br>        *Plaintiff*,          * <br>                              * <br>    v.                        * <br>                              * <br> THE UNITED STATES,           * <br>                              * <br>        *Defendant*.          * <br> * * * * * * * * * * * * *    * | Motion *In Limine*; Relevance of Expert Opinion; Scope of CDA Claim. |

*Daniel L. Baxter*, Sacramento, CA, for plaintiff.

*A. Bondurant Eley*, United States Department of Justice, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Martin F. Hockey, Jr.*, Assistant Director, *Reta E. Bezak*, Trial Attorney, Washington, DC, for defendant.

———————————

**OPINION**

———————————

**Bush**, *Senior Judge*.

On June 10, 2016 defendant filed a Renewed Motion *In Limine* to Exclude the Expert Testimony of Champ Clark and Portions of the Expert Report and Testimony of George Sills. This motion has been fully briefed on an expedited

basis. *See* Order of June 13, 2016. The court also solicited oral argument on the motion. *See* Order of June 28, 2016. Defendant's motion requests that the court exclude the entirety of the "intended expert testimony" of Mr. Clark from the evidence to be considered in this matter, and exclude a significant portion of Mr. Sills' expert report and proposed testimony. Def.'s Mot. at 2. Although a very similar motion was denied in its entirety on December 22, 2015, largely because the dispute was not fully developed at that time, the court now grants defendant's renewed motion *in limine*, in part.[1]

The government's challenge to the expert testimony of Mr. Clark and Mr. Sills, and to the content of Mr. Sills' expert report, is fundamentally a relevance challenge. The reliability of plaintiff's experts is not challenged. *Cf. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (stating that expert "testimony is admissible only if it is both relevant and reliable" (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993))). In particular, defendant suggests that the challenged expert opinions "have no nexus to the certified claims and contracting officer's final decisions that establish the jurisdictional basis for this lawsuit." Def.'s Mot. at 2. It is also important to note that this evidentiary dispute concerns only two of the three contracting officer (CO) final decisions that underlie this suit arising from a levee restoration project in Texas – decisions on the 'embankment fill claim' and the 'riprap claim.'[2]

## BACKGROUND

This is a suit brought under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109 (2012) (CDA). Am. Compl. ¶¶ 15, 20. The parties agree that in 2010 plaintiff and the United States Section of the International Boundary and Water Commission (Commission or IBWC) entered into a "lump-sum" contract whereby Magnus Pacific Corporation (Magnus or Magnus Pacific) would perform restoration work on a levee near Presidio, Texas. *Id.* ¶ 5; Def.'s Mot. at 1; Pl.'s

---

[1]/ Background information regarding this dispute is discussed in the court's Order of December 22, 2015; familiarity with that order is assumed. Only the facts most relevant to defendant's evidentiary objections are recounted here.

[2]/ According to the amended complaint, "[e]mbankment fill is earthen material used to assist in supporting the impermeability of a levee [and] [r]iprap is rock or similar material used to armor shorelines, streambeds, and levees." Am. Compl. at 2 n.1.

Resp. Ex. 1, at 1.  The two claims in the amended complaint which are addressed in plaintiff's disputed expert testimony are summarized differently by the parties, although the differences are not material to the issues before the court at this time. The embankment fill claim is described by defendant as a claim for "$3,186,212 for the removal and replacement of allegedly unsuitable fill material that Magnus claims to have discovered unexpectedly in the levee subgrade." Def.'s Mot. at 1. The riprap claim is described as a claim for "$607,575 in connection with supplying and placing riprap on the levee." *Id.*  Plaintiff collectively describes these two claims as

> claims [which] arise out of the Government's directive for Magnus Pacific to remove and replace embankment fill material and riprap material, respectively, which removal and replacement was (a) not included within the scope of work called for by the underlying contract documents, and (b) never compensated by the Government despite repeated assurances that such payment would be forthcoming.

Pl.'s Resp. Ex. 1, at 1.

## DISCUSSION

Defendant contends that the challenged expert opinions "present a grab bag of allegations that have no connection to the matters that Magnus ever put at issue in the certified claims that it submitted to the contracting officer, and that Magnus has now identified as the subject matter of this trial." Def.'s Mot. at 6.  In other words, according to the government "the challenged evidence is wholly irrelevant to the subject matter of the certified claims and contracting officer's final decisions, and affirmatively seeks to encourage this Court to decide this case on an improper basis, *i.e.*, a basis other than what was presented to the contracting officer for decision." Def.'s Reply at 4.  Plaintiff responds that its experts offer opinions relevant to Magnus Pacific's contention that "the project solicitation documents issued by the IBWC were inadequate to place a reasonable bidder on notice of the actual conditions attending to the Lower Reach project." Pl.'s Sur-Reply at 2 (citing *Randa/Madison Joint Venture III v. Dahlberg*, 239 F.3d 1264, 1269-[77] (Fed. Cir. 2001)).  Plaintiff also argues that its experts'

3

testimony is relevant to "Establishing that Magnus Pacific['s] Performance of Additional Work Was Authorized and Directed by the Government." *Id.* at 4.

The dispute before the court focuses on a one-page summary of seven expert opinions of Mr. Clark and on twenty-eight opinions expressed by Mr. Sills throughout his expert report. *See* Def.'s Mot. at 6-9, Corrected App. at 2. Defendant has also proposed a "red-lined" version of Mr. Sills' expert report which attempts to excise irrelevant opinion. *See id.* Corrected App. Tab 2. The court will return to these expert opinions, but begins its analysis by addressing the certified claims presented to the contracting officer which define the permissible scope of plaintiff's CDA claims before this court.

**I.      Scope of Plaintiff's Embankment Fill and Riprap Claims**

    **A.      Embankment Fill Claim**

        **1.      The Certified Claim and CO's Final Decision**

As of October 19, 2012, the title of the embankment fill certified claim was "Request for Change Order – Removal of Unsuitable Levee Fill and Placement of Additional Embankment Fill." Def.'s Mot. Corrected App. at 56. Subsequently, as of June 4, 2013, the title of the claim was changed to "Request for a Change Order for the Removal of Unsuitable Embankment Fill, Trucking and Disposal of Slurry Wall Workpad Degrade Material and Import and Trucking of Slurry Wall Workpad Embankment Fill dated October 19, 2012." *Id.* at 55. The amount requested by Magnus to be included in the change order was $3,186,212. Am. Compl. ¶ 10. The certified claim specifically mentioned the term "differing site condition," Def.'s Mot. Corrected App. at 58, and thus invoked recovery under the "Differing Site Conditions" clause of the contract, *id.* at 315, and caselaw relevant to that theory of recovery.

There was no mention of an implied-in-fact contract or of an oral contract in the embankment fill certified claim. There was also no articulation of a defective design claim or a defective plans and specifications claim in the embankment fill certified claim. There was, however, an allegation that the work encompassed in the embankment fill certified claim was "not a contract requirement." Def.'s Mot. Corrected App. at 58.

4

The contracting officer's final decision on the embankment fill certified claim denied the claim in its entirety. Def.'s Mot. Corrected App. at 208. The CO did not affirm or deny that Magnus encountered a differing site condition. Instead, the CO found fault with numerous aspects of the embankment fill certified claim – its timing, the failure of Magnus to comply with contract specifications relevant to embankment fill, and the failure of Magnus to accurately measure the amount of additional embankment fill required. *Id.* at 209-10. The CO also specifically addressed whether Magnus had been directed to perform work outside of the contract requirements, and concluded that no such direction had occurred. *Id.* at 209.

### 2. Scope of Embankment Fill CDA Claim

Based on a review of the embankment fill certified claim, the contracting officer's final decision on the claim, and the parties' arguments in this regard, the court finds that the certified claim included an explicit differing site conditions claim as well as an implicit constructive change claim, expressly recognized and addressed by the CO, for additional work ordered outside the contract requirements. The constructive change claim derives from the Changes clause included in this contract, Def.'s Mot. Corrected App. at 316, and caselaw relevant to that theory of recovery. Beyond these two theories of recovery, *i.e.*, differing site conditions and constructive change, the court cannot read the embankment fill certified claim to specifically articulate an implied-in fact contract claim, an oral contract claim, a defective design claim, or a defective plans and specifications claim.

As the court noted in its Order of December 22, 2015, however, determining the permissible scope of a CDA claim can present numerous challenges. Of particular importance here, a contractor may not be strictly limited, in a suit before this court, to the legal theories presented to the CO. *See, e.g.*, *E & E Enters. Glob., Inc. v. United States*, 120 Fed. Cl. 165, 173-77 (2015) (*E & E Enterprises*) (discussing precedent on this topic). The court inquired at oral argument whether the certified claims before the contracting officer could be read to encompass, for example, a defective plans and specifications claim. The government discerned no such claim in the certified claim presented by Magnus to the CO, and plaintiff's counsel conceded that a distinct defective plans and specifications claim was not articulated in the certified claims, although defective

plans and specifications were certainly implicated in the context of alleged differing site conditions. The court must inquire, nonetheless, whether the operative facts of plaintiff's differing site conditions claim in the embankment fill certified claim contained sufficient overlap with a defective plans and specifications claim to provide jurisdiction in this court for an embankment fill claim founded on alleged defective plans and specifications. *See Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (holding that a certified claim provides jurisdiction in this court for claims which "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery").

For this contract, at least some of the plans and specifications for levee restoration would necessarily be implicated by the operative facts pertinent to a Type I differing site conditions claim. The elements of proof for a Type I differing site conditions claim are as follows:

> In order to prevail on such a site conditions claim, a contractor must establish four elements. First, the contractor must prove that a reasonable contractor reading the contract documents as a whole would interpret them as making a representation as to the site conditions.
>
> Second, the contractor must prove that the actual site conditions were not reasonably foreseeable to the contractor, with the information available to the particular contractor outside the contract documents, *i.e.*, that the contractor "reasonably relied" on the representations. . . .
>
> Third, the contractor must prove that the particular contractor in fact relied on the contract representation. . . .
>
> Fourth, the contractor must prove that the conditions differed materially from those represented and that the contractor suffered damages as a result . . . .

6

*Int'l Tech. Corp. v. Winter*, 523 F.3d 1341, 1348-49 (Fed. Cir. 2008) (*International Technology*) (citations omitted). These elements of proof must be compared to the elements of proof for a claim based upon defective plans and specifications, to see if there is significant overlap in operative facts. *Scott Timber*, 333 F.3d at 1365.

To recover under a defective plans and specifications theory, the elements of proof are as follows:

> [W]here a contractor-claimant seeks to recover an equitable adjustment for additional work performed on account of a defective specification, the contractor-claimant must show that it was misled by the defect. To demonstrate that it was misled, the contractor-claimant must show both that it relied on the defect and that the defect was not an obvious omission, inconsistency or discrepancy of significance, – in other words, a patent defect – that would have made such reliance unreasonable.

*E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004). In some CDA litigation, the operative facts of Type I differing site conditions claims presented to the CO and defective specifications claims presented to the forum do not significantly overlap; in such a circumstance, jurisdiction over the defective specifications claim will not lie. *E.g.*, *Kiewit Constr. Co. v. United States*, 56 Fed. Cl. 414, 421 (2003); *Optimum Servs., Inc.*, ASBCA No. 57575, 13 B.C.A. ¶ 35,412 (Sept. 10, 2013). Here, however, for the embankment fill claim, theories of recovery based on defective plans and specifications or on a differing site condition rely on a significant set of common operative facts. When a differing site condition claim relates to earthwork and cubic yards of soil or fill, defective specifications that describe the earthwork may constitute an important operative fact.[3] *See, e.g.*, *Ace Constructors, Inc. v. United States*, 499 F.3d 1357, 1365 (Fed.

---

[3] In some factual scenarios, a defective specifications claim cannot proceed because the contract's Differing Site Conditions clause provides the only permissible theory of recovery. If, for example, the only alleged defect in contract documents is a failure to disclose a differing site

(continued...)

Cir. 2007) (The government does not dispute that this discrepancy [underlying a differing site conditions earthwork claim] was the result of a defective specification . . . ."). For these reasons, expert opinion as to alleged defective plans and specifications is not necessarily irrelevant to Magnus Pacific's embankment fill claim. *See Scott Timber*, 333 F.3d at 1365.

The court, however, rejects any attempt to broaden the scope of the embankment fill claim to include a defective design claim. Plaintiff has not shown, and the court cannot postulate, how a defective design claim shares any operative facts with a differing site conditions claim under the present circumstances. Furthermore, plaintiff's arguments regarding the relevance of defective design evidence to be provided by Mr. Sills appear to relate to defective plans and specifications, rather than to defective design. *See* Pl.'s Resp. Ex. 1, at 5 (stating that plaintiff should be able to recover for Commission-directed changes to contract work, and that plaintiff should have been able to rely on data provided in contract documents). For these reasons, the court holds that expert opinion as to defective design is not relevant to plaintiff's embankment fill claim.

Finally, the court notes that nothing in the embankment fill certified claim alerted the CO to an allegation that Magnus Pacific's claim was founded on an implied-in-fact contract or an oral contract, rather than on the written, express contract executed by the parties, or constructive changes thereto. This court has held that a contractor may not introduce an implied-in-fact claim into CDA

---

[3](...continued)
condition, the Differing Site Conditions clause controls:

> Although differing site conditions and defective specifications claims are distinct in theory, they collapse into a single claim under facts such as these, where the alleged defect in the specification is the failure to disclose the alleged differing site condition. Where the differing site conditions claim and the defective specifications claim are so intertwined as to constitute a single claim, that claim will be governed by the specific differing site conditions clause and the cases under that clause.

*Comtrol, Inc. v. United States*, 294 F.3d 1357, 1362 (Fed. Cir. 2002). Because it is not clear whether the facts of this case would be governed by *Comtrol*, the court will not deprive plaintiff of the opportunity to attempt to prove a defective plans and specifications claim.

8

litigation if such a claim was absent from the certified claim presented to the contracting officer. *E & E Enterprises*, 120 Fed. Cl. at 175-76. There is a fundamental difference between a claim founded on a written CDA contract and one founded on an implied-in-fact contract or oral contract addressing the same subject matter.[4] *See id.* Because plaintiff's embankment fill certified claim contained no reference to an implied-in-fact or oral contract, recovery related to directions received by Magnus during contract performance is addressed by the contract's Changes clause and constructive change caselaw, and not by other sources of contract law dependent on implied-in-fact or oral contracts.

### B. Riprap Claim

#### 1. The Certified Claim and CO's Final Decision

The title of the riprap certified claim was "Request for a Change Order [for] the Supply and Placement of Additional Rip Rap dated September 12, 2012." Def.'s Mot. Corrected App. at 211. There is no explicit reference to a legal theory underlying the requested change order, and no specific reference to contract clauses which might support the change order. Instead, the riprap claim identified three distinct quantities of riprap, two of which were included in the contract price by either the base contract or Contract Modifications M001 and M003, as well as a third quantity of riprap, the "additional" riprap, for which Magnus sought $607,575. *Id.* at 212, 222. It appears that Magnus attributed the "additional" riprap placed on the levee as a required replacement for "existing" riprap that was either unsuitable or insufficient for the restored levee. *Id.* at 212, 219, 222, 238-39.

---

[4]/ Even if the embankment fill certified claim could provide jurisdiction over claims based on implied-in-fact or oral contracts, plaintiff would need to overcome precedent which is inhospitable to implied-in-fact and oral contract claims in the context of CDA suits based on written contracts. *See Johnson Mgmt. Grp. CFC, Inc. v. Martinez*, 308 F.3d 1245, 1258 (Fed. Cir. 2002) ("[The appellant] does not contest the general rule . . . that an oral contract may not modify a written contract which is required by regulation to be in writing." (citing 48 C.F.R. § 2.101; *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865, 869 (Fed. Cir. 1987))); *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." (citing *ITT Fed. Support Servs. v. United States*, 531 F.2d 522, 528 n.12 (1976))).

The contracting officer denied the riprap certified claim in its entirety. Def.'s Mot. Corrected App. at 250.  For a number of reasons, the CO considered both the contractual and factual bases for the claim to be flawed.  For example, in his view Magnus bore the risk of inaccurate estimates for the amount of riprap that would be required to rehabilitate the levee.  *Id.* at 251.  The CO also stated that Magnus re-used existing riprap in ways that were not reflected in credits that should have reduced the contract price.  *Id.* at 252.  In essence, the CO interpreted the contract and the communications between Magnus and the Commission to foreclose any payment for "additional" riprap placed on the levee.

### 2.   Scope of Riprap CDA Claim

The court considers whether the riprap certified claim, as evidenced by the claim itself and the CO's decision on the claim, might share operative facts with the three legal theories discussed previously in this order.  A Type I differing site condition theory of recovery for additional riprap would be founded on an assertion that the contract made an incorrect representation as to existing riprap upon which Magnus relied to its detriment.  The riprap certified claim relies, in part, on a solicitation amendment, contract specifications and drawings, contract modifications and Contract Line Item Number (CLIN) 007 as the foundation for the amount of "additional" riprap asserted.  *See* Def.'s Mot. Corrected App. at 213, 216, 222-23, 234-37.  The contracting officer noted that Magnus estimated riprap quantities based, in part, on "project specification and plans."  *Id.* at 251.  In the court's view, any representations in contract documents regarding existing riprap are implicit in the riprap certified claim.  Because there is sufficient overlap between the riprap certified claim and the operative facts for a Type I differing site conditions claim, expert opinion as to the elements of a Type I differing site condition theory could be relevant to plaintiff's riprap claim.

Similarly, a defective plans and specifications theory of recovery for additional riprap would be founded on an assertion that the contract plans, drawings and specifications were defective as to the riprap aspect of the levee project, and that Magnus was misled by latent, not patent, defects in these contract documents.  The riprap certified claim relies explicitly on contract specifications and drawings, *see* Def.'s Mot. Corrected App. at 223, and the contracting officer noted that riprap costs were estimated by Magnus based, in part, on "project specification and plans," *id.* at 251.  The court must presume that Magnus intends

to assert that it relied on project plans, drawings and specifications in order to perform riprap work. Because there would be sufficient overlap between the riprap certified claim and the operative facts of a defective plans and specifications claim, expert opinion as to the elements of a defective plans and specifications claim could also be relevant to plaintiff's riprap claim.

Finally, the court considers whether the operative facts of a constructive change theory of recovery are implicated in the riprap certified claim. This is a closer question, because in many respects the riprap claim focuses on the proper interpretation of Contract Modifications M001 and M003 as well as the rights and responsibilities established by those modifications. *See* Def.'s Mot. Corrected App. at 212-16, 222, 251. Indeed, defendant insists that the riprap claim presents, in essence, an attempt by plaintiff to convert a "lump sum" CLIN into a "time and materials" CLIN. Def.'s Mot. at 12 n.3; Def.'s Reply at 8-9.

The court notes, however, that communications between the parties are another focus of the riprap certified claim. One aspect of the dispute concerns whether correspondence on the riprap issue was incorporated into the contract. *See* Def.'s Reply at 8 (asserting that neither Modification M001 nor M003 "incorporated by reference any correspondence outside the four corners of the parties' bilateral agreement"). Certain correspondence is nonetheless cited, both in the riprap certified claim and in the contracting officer's final decision, as establishing rights and responsibilities under the contract. *See* Def.'s Mot. Corrected App. at 222 (riprap claim) (quoting a letter wherein Magnus asserted that existing riprap would be handled on a case by case basis); *id.* at 252 (CO's final decision) (quoting the same paragraph of the same letter as establishing the Commission's right to a credit for re-used existing riprap). In these circumstances, the riprap certified claim may involve more than a narrow dispute as to the meaning of the text of Contract Modifications M001 and M003, and the court must therefore inquire whether the riprap certified claim could support a constructive change claim before this court.

A constructive change claim includes the following elements:

> To demonstrate entitlement to an equitable adjustment, [the contractor] must prove that the contract was modified by someone with actual authority. Where a

11

> party contracts with the government, apparent authority
> of the government's agent to modify the contract is not
> sufficient; an agent must have actual authority to bind
> the government. Such actual authority may be express or
> implied from the authority granted to that agent. We
> must determine whether [the agency's representative]
> had express or implied authority to bind the government
> to contract modifications he approved, or whether these
> changes were ratified by the CO.

*Winter v. Cath dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007). Here, a constructive change theory of recovery for additional riprap could be founded on an assertion that authorized representatives of the Commission approved or ratified Magnus's proposals regarding existing riprap replacement, and that those changes to the contract work bound the government. This particular issue was fully joined in the riprap certified claim and the contracting officer's final decision. *See* Def.'s Mot. Corrected App. at 222, 252. Because there is sufficient overlap between the riprap certified claim and the operative facts of a constructive change claim, expert opinion as to the elements of a constructive change claim could be relevant to plaintiff's riprap claim.

## II.   Relevant Expert Opinion Testimony of Mr. Champ Clark

Having set forth the legal undergirding and parameters controlling the present disputes, the court now addresses specific expert opinion challenges brought by the government. The government asks the court to exclude all seven topics included in the summary of Mr. Clark's proposed expert testimony. Among those seven topics, the court finds only two statements that could be considered to be potentially relevant to the embankment fill claim under the theories of Type I differing site conditions, defective plans and specifications, or constructive change to the contract.

The first statement opines:

> The topographical survey for the Lower Reach project
> was incomplete, leading to difficulties in determining the
> accurate volumes of earth that needed to be moved in

      order to properly construct the levee.

Def.'s Mot. Corrected App. at 2.  The second statement, which could be relevant to both the embankment fill claim and the riprap claim, opines that "[t]he project plans and specifications were *improperly* copied from a prior project instead of being designed specifically for the Lower Reach Levee." *Id.* (emphasis added). According to plaintiff's counsel at oral argument, the key word in this second statement is "improperly," which should be understood to broadly refer to inaccurate, inappropriate plans and specifications.  These two statements of expert opinion held by Mr. Clark are the only ones potentially relevant to plaintiff's embankment fill and riprap claims.

     Mr. Clark's other opinions, as summarized by plaintiff's counsel in the document served on the government, include:  (1) percipient witness factual observations, which are not expert testimony; (2) expert opinions on unrelated aspects of the levee project; and (3) improper analysis of the legal rights and duties established by the contract.[5] *Id.*  The summary of Mr. Clark's proposed expert testimony does not include any expert opinions which specifically mention riprap.  In sum, Mr. Clark's expert testimony is excluded as irrelevant, except for his expert opinion regarding the "topographical survey for the Lower Reach project" as that survey might support plaintiff's embankment fill claim, and his testimony on inaccurate plans and specifications, as his expert opinion might support either the embankment fill claim and/or the riprap claim.

     Thus, defendant's renewed motion *in limine*, as it pertains to Mr. Clark's expert opinions summarized in the record before the court, Def.'s Mot. Corrected App. at 2, is granted in part, as to paragraphs a, d, e, f, and g, and the second, third and fourth sentences of paragraph b.  Defendant's renewed motion *in limine* is denied in part, however, as to the first sentence of paragraph b, as well as to paragraph c.  *See id.* ("The topographical survey for the Lower Reach project was incomplete, leading to difficulties in determining the accurate volumes of earth that needed to be moved in order to properly construct the levee."; "The project

---

[5]/ As a general rule, contract interpretation is not the proper subject for expert opinion testimony unless specialized knowledge is required to interpret contract terms.  *E.g., Murfam Farms, LLC ex rel. Murphy v. United States*, No. 06-245, 2008 WL 7706607, at *2 & n.1 (Fed. Cl. Sept. 19, 2008) (citing cases).

plans and specifications were improperly copied from a prior project instead of being designed specifically for the Lower Reach Levee."). The court now turns to the proposed expert testimony of Mr. Sills.

### III.   Relevant Expert Opinion Testimony of Mr. George Sills

Defendant's renewed motion *in limine* seeks to exclude a significant number of Mr. Sills' expert opinions, and specifically targets twenty-eight allegedly irrelevant topics included in his expert report. The inquiry into the relevance of the proposed expert testimony of Mr. Sills is more expansive, due to the large number of defendant's challenges to Mr. Sills' expert opinions, and because the government has attempted to delete irrelevant opinions from the thirty-five page narrative included in Mr. Sills' expert report. The court takes a more general approach and will not require an excised version of Mr. Sills' expert report. The court specifically rejects, however, Mr. Baxter's suggestion that he be given free rein to present all of Mr. Sills' expert opinions at trial, subject only to the court's interventions when irrelevant material is proffered. Instead, the court's relevance analysis set forth below imposes firm constraints for the presentation of Mr. Sills' expert opinions at trial and these constraints, in and by themselves, should suffice.

Of the twenty-eight opinions challenged by defendant, the court must agree with the government that the majority of these opinions address aspects of the levee project which have no potential relevance to plaintiff's embankment fill claim or plaintiff's riprap claim. This is true despite the fact that for purposes of deciding defendant's renewed motion *in limine*, the court has defined relevant expert testimony as testimony which addresses the elements of proof for Type I differing site conditions, defective plans and specifications, or constructive changes to the contract. In this regard, the court excludes Mr. Sills' expert testimony on:  (1) any and all design flaws in the levee project; (2) all defective plans and specifications which detail aspects of the levee project that are distinct from the specific topics of embankment fill and/or riprap; and, (3) all flaws in contract administration that do not directly support the elements of proof for Type I differing site conditions, defective plans and specifications, or constructive changes to the contract. Mr. Sills' expert testimony is also subject to the same general prohibitions on inappropriate expert witness testimony that the court noted in its discussion of Mr. Clark's proposed expert testimony. *See supra* note 5 and accompanying text.

To correlate this relevance analysis with the list of Mr. Sills' opinions challenged by defendant, defendant's renewed motion *in limine* is granted in part as to topics 2-4, 6-9, 13-18, 22-23, and 25-26, because these must be excluded as irrelevant topics for expert testimony in this suit.  *See* Def.'s Mot. at 6-9.  Conversely, defendant's renewed motion *in limine* is denied in part as to topics 1, 5, 10-12, 19-21, 24, and 27-28, because these topics are potentially relevant in this suit, *see id.*, as long as Mr. Sills opines within the context of the elements of proof for Type I differing site conditions, defective plans and specifications, or constructive changes to the contract.  The court considers these rulings to correctly weigh the issues of pragmatism, efficiency and relevance highlighted by the parties in their briefs and at oral argument.

## CONCLUSION

The court would be remiss if it failed to seize this opportunity to prevent the presentation of irrelevant evidence at trial:

> There is no question under R[CFC] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial.  Not only does this court have such power, it has a duty to exercise it in appropriate cases.  This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues.  Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

*Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983) (citation omitted).  The court notes that until recently, the legal principles the parties expected to rely upon at trial, as well as essential contract and claim documents, had not been fully disclosed to the court.  The court was obliged to postpone its ruling on the relevance of challenged expert testimony until the record was sufficient for that purpose.  However, now that the parties have had the opportunity to set forth their proposed legal theories in support of the arguments to be presented at trial, and now that the court has, in turn, weighed in to define the issues, material facts and theories actually in dispute, it is the expectation of this court that counsel will

conscientiously adhere to those determinations during the upcoming trial.

Accordingly, for the foregoing reasons it is hereby **ORDERED** that

(1) Defendant's Renewed Motion In *Limine* to Exclude the Expert Testimony of Champ Clark and Portions of the Expert Report and Testimony of George Sills, filed June 10, 2016, is **GRANTED in part** and **DENIED in part**, as stated in this order; and

(2) On or before **July 29, 2016**, the parties shall **FILE** their **Joint Stipulations of Fact**.

/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge